a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ROY ROBERTSON #716382,
Plaintiff

CIVIL DOCKET NO. 5:19-CV-01435
SEC P

VERSUS

CHIEF JUDGE S. MAURICE HICKS, JR.

DARREL VANNOY,
Defendants

MAGISTRATE JUDGE PEREZ-MONTES

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1) filed by *pro se* Petitioner Roy Robertson ("Robertson"). Robertson is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Robertson challenges his conviction and sentence imposed in the First Judicial District Court, Caddo Parish.

Because Robertson is not entitled to habeas relief, his § 2254 Petition should be DENIED and DISMISSED WITH PREJUDICE.

## I.    Background

Robertson was convicted of aggravated rape of a person under the age of 12 in violation of La. R.S. 14:42. *State v. Robertson*, 51,521 (La. App. 2 Cir. 8/16/17, 1); 243 So.3d 1196. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. *Id.* Robertson's conviction was affirmed on appeal, but the life sentence was modified to a term of 20 years imprisonment

1

without restriction on parole, probation, or suspension of sentence. *Id.* Robertson sought no further review on direct appeal.

Robertson filed an application for post-conviction relief on the grounds that: (1) he was denied the right to appellate review and a trial transcript; (2) he was denied effective assistance of counsel because his attorney did not hire a child sexual abuse expert; (3) the prosecutor committed misconduct during the opening and closing arguments, denying Robertson of a fair trial; (4) the state was allowed 13 peremptory challenges during voire dire; (5) peremptory strikes were used in a discriminatory manner; (6) he was denied effective assistance of counsel because his attorney failed to properly investigate and interview witnesses prior to trial, subpoena records, and object to remarks by the prosecutor; (7) his appellate counsel was ineffective for failing to raise crucial issues on appeal; (8) there was insufficient evidence to convict him; and (9) the statute of limitations had expired. ECF No. 1-3 at 48-53.

The trial court denied Robertson's application, and the appellate court denied writs "on the showing made." ECF No. 1-4 at 32-37, 73. The Louisiana Supreme Court also denied writs, noting: "Applicant fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to his remaining claims, applicant fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2." *State v. Robertson*, 2018-1807 (La. 10/15/19); 280 So.3d 559.

## II.    Law and Analysis

### A.    Rule 8(a) Resolution

The Court is able to resolve Robertson's § 2254 Petition without the necessity of an evidentiary hearing because there are no genuine issues of material fact relevant to his claims, and the state court records provide an adequate factual basis. *See Moya v. Estelle*, 696 F.2d 329, 332-33 (5th Cir. 1983); *Easter v. Estelle*, 609 F.2d 756, 761 (5th Cir. 1980); Rules Governing Section 2254 Cases.

### B.    Standard of Review

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).  The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply de novo review of factual findings or to substitute its own opinions for the determinations made by the trial judge.  *See Davis v. Ayala*, 576 U.S. 257, 276 (2015) (citing *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)).

Under § 2254 and the AEDPA, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in state court unless the adjudication of the claim: (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

state court proceeding.  *See Martin v. Cain*, 246 F.3d 471, 475-76 (5th Cir. 2001), *cert. den.*, 534 U.S. 885 (2001).

Therefore, § 2254(d) demands an initial inquiry into whether a prisoner's claim has been "adjudicated on the merits" in state court.  If it has, the AEDPA's highly deferential standards apply.  *See Davis*, 576 U.S. at 269 (citing *Richter*, 562 U.S. at 103).

When a federal claim has been presented to a state court and the state court has summarily denied relief without a statement of reasons, it may be presumed that the state court adjudicated the claim on the merits, in the absence of any indication of state law procedural principles to the contrary.  *Richter*, 562 U.S. at 99.  A habeas court must "determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *See Richter*, 562 U.S. at 102.  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden must be met by showing there was no reasonable basis for the state court to deny relief.  *Richter*, 562 U.S. at 98.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  A state court decision falls within

the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. *See Martin*, 246 F.3d at 476; *see also Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007), *cert. den.*, 555 U.S. 827 (2008).

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. *See Martin*, 246 F.3d at 476. An unreasonable application is different from an incorrect one. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable. *See Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *see also Davis*, 135 S. Ct. at 2199 (citing *Fry v. Pliler*, 551 U.S. 112, 119 (2007)).

### C.   <u>Robertson's rights were not violated with respect to a trial transcript.</u>

Robertson claims that he suffered a violation of his constitutional rights under the Sixth Amendment because he was allegedly denied access to a complete transcript of his trial proceedings and the right to appellate review. ECF No. 1. Robertson raised this claim on post-conviction review. The Louisiana Supreme Court determined that Robertson failed to satisfy his post-conviction burden of proof. *Robertson*, 280 So.3d at 559. The state trial court specifically addressed the merits of this claim:

> The Court minutes and record does not reflect any request by Petitioner for a complete trial transcript for appellate review.  Under *State ex rel. Simmons v. State*, 647 So.2d 1094, 1095 (La. 1994), inmates are entitled to <u>*one*</u> free copy of: (1) transcripts of their guilty plea colloquy; (2) copies of the bill of information or grand jury indictment charging them with committing a crime; (3) copies of the district court minutes for various portions of their trials; (4) copies of transcripts of evidentiary hearings held on their applications for post-conviction relief; and (5) copies of the documents committing them into custody.  Trial transcripts are not included within the <u>one</u> *free* copy of documents for indigent inmates.

ECF No. 10-5 at 111-12.

To the extent Robertson alleges a violation of his rights under the Louisiana Constitution, his claim is not cognizable on federal habeas review.  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law).

For purposes of a federal constitutional claim, federal law recognizes the right of an indigent defendant to a trial transcript, or some alternative that fulfills the same function.  *Griffin v. Illinois*, 351 U.S. 12, 18-20 (1956); *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir. 1980) (the state is not obligated to automatically supply a complete verbatim transcript).  Accordingly, the record is "adequate for full appellate review" if it contains the portions necessary to address the alleged errors.  *Higginbotham v. Louisiana*, 817 F.3d 217, 222 (5th Cir. 2016) (citing *Schwander v. Blackburn*, 750 F.2d 494, 497–98 (5th Cir. 1985)).

Robertson was represented by counsel on appeal, and his attorney filed an appellate brief challenging the sufficiency of the evidence.  She cited to the trial transcript, which she borrowed from the court.  ECF No. 10-4 at 163-67; 10-5 at 92.  Counsel provided Robertson a copy of her brief and notified him of the requirements

for preparing a *pro se* brief.  ECF No. 10-5 at 90-91.  Robertson does not allege that the record was inadequate for review by the appellate court.

Moreover, claims based on incomplete transcripts must show that "the absence of such a transcript prejudiced [the defendant's] appeal."  *Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987).  Robertson does not demonstrate that his appeal was prejudiced by the lack of a transcript.

Robertson cannot show that the state courts' adjudication of his claim was contrary to or an unreasonable application of any clearly established federal law as determined by the United States Supreme Court.

### D.    Robertson was not denied effective assistance of counsel.

Robertson presents three claims of ineffective assistance of counsel in violation of *Strickland* and the Sixth Amendment.  First, he alleges that trial counsel failed to consult with or hire an independent expert in child sexual abuse to which he was entitled under *Ake v. Oklahoma*, 470 U.S. 68 (1985).  Next, Robertson alleges that trial counsel failed to investigate and object to improper comments by the prosecution.  Finally, Robertson alleges that appellate counsel  provided ineffective assistance because she did not properly review the record and raised only two issues on appeal.   ECF No. 1-2.

Robertson raised these claims on post-conviction review, and the Louisiana Supreme Court found that Robertson failed to meet his burden under *Strickland.  See Robertson*, 280 So.3d at 559.   Because his ineffective assistance claims were adjudicated on the merits in state court, Robertson must show that the state court

adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of" *Strickland*, which is the "clearly established Federal law, as determined by the Supreme Court" applicable to ineffective assistance claims. *See* 28 U.S.C. §2254(d)(1); *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment; and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Strickland*, 466 U.S. at 687. The first prong does not require perfect assistance by counsel; rather, a petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 688.

Courts must use deference in their review of attorney performance under *Strickland* to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 689). Accordingly, courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Strickland*'s second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In other words,

the petitioner must show prejudice great enough to create a substantial—rather than conceivable—likelihood of a different result. *See Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). "Both of [*Strickland*'s] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

Therefore, this Court must review Robertson's ineffective assistance claim under a "doubly deferential" standard of *Strickland* and § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017) ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)."). That is, on habeas review, "federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quotation marks omitted). The habeas court does not determine whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 99.

Robertson's first ineffective assistance claim asserts that expert testimony would have been necessary to counter opinion evidence by the State's expert. Robertson relies on *Ake*, which held "that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation

and presentation of the defense." *Ake v. Oklahoma*, 470 U.S. at 83. However, *Ake* is not applicable here because Robertson's sanity was not at issue.

Moreover, as the State points out, it did not present expert testimony in the field of child sexual abuse as Robertson contends. Robertson claims that his attorney should still have consulted with an independent sexual assault expert. ECF No. 15 at 11.

Robertson offers only speculation and conclusory allegations that the outcome would have been different if his attorney had consulted with an expert in the field of "delayed disclosure"; that the expert would have testified as Robertson hoped; and that the jury would have found the testimony credible. *Id.* at 14-15. Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue sufficient to support federal habeas relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

Robertson's second ineffective assistance claim is that counsel failed to investigate and object to the alleged improper comments by the prosecution. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Adekeye v. Davis*, 938 F.3d 678, 682–83 (5th Cir. 2019) (quoting *Strickland*, 466 U.S. at 691). "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Id.* at 683 (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).

Robertson concludes that his attorney must not have subpoenaed the record before trial because he seemed surprised by the testimony at trial. ECF No. 1-2 at 36. This claim falls far short of the specificity requirement. Robertson does not show what would have been revealed through further investigation or how it would have altered the trial. Robertson's claim is conclusory.

Robertson's allegation that counsel failed to object to statements by the prosecutor is also meritless. First, the allegedly improper comments by the prosecutor were simply not made at trial, as previously discussed. Therefore, his attorney could not object to statements not made. "Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *Smith v. Puckett*, 907 F.2d 581, 585, n.6 (5th Cir. 1990); *see also Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

Also, Robertson's attorney made objections to certain statements in the prosecutor's closing argument and also moved for a mistrial. ECF No. 10-4 at 100-02. The judge overruled the objection and denied the mistrial. This does not establish deficient performance by counsel. *Strickland*, 466 U.S. at 687. Robertson does not show that the trial court's ruling was incorrect or that he was so prejudiced that he was deprived of a fair trial. *Id.*

Additionally, in responding to Robertson's application for post-conviction relief, the State filed an affidavit from trial counsel, which set forth his criminal defense

experience and articulated his trial strategy and tactical decisions in Robertson's case. ECF No. 10-5 at 96-98. Counsel noted that the State presented three credible witnesses who testified that Robertson sexually assaulted them, and Robertson had no credible witness or proof to support his claim of innocence. Counsel attested that he studied the facts, investigated the case, met with Robertson, and obtain his cases file from an attorney Robertson had initially hired. *Id.* He also addressed strategic decisions made regarding objections and his attempt to not alienate the jury. *Id.* Therefore, Robertson cannot overcome the doubly deferential standard.

Finally, Robertson's claim against appellate counsel is also meritless. To establish ineffective appellate counsel, a petitioner must show that appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and that he would have prevailed on the issue on appeal but for the deficient representation. *Smith v. Robbins*, 528 U.S. 259, 285-86.

Though Robertson suggests there were many objections, motions for mistrial, and bench conferences, he fails to identify any specific objection, motion, or conference that would have provided a non-frivolous issue for appeal or an issue likely to succeed on appeal. Without more, Robertson cannot mee the doubly deferential standard.

### E.   Robertson fails to establish prosecutorial misconduct.

Robertson alleges that he was denied a fair trial because of prosecutorial misconduct in the opening statement and closing argument. Robertson raised this claim on post-conviction review, but the Louisiana Supreme Court found that he failed to meet his burden of proof. *See Robertson*, 280 So.3d at 559.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008), *cert. denied*, 556 U.S. 1188 (2009). This requires a showing that the misconduct was "persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Geiger*, 540 F.3d at 308 (citing *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988)).

Robertson claims that the prosecutor made three improper remarks: (1) that the jury had to protect society from "predators" like him; (2) that he has gotten away with crimes for decades and needs to be stopped; and (3) that he had "destroyed enough lives." ECF No. 1-2 at 29. A review of the prosecution's arguments in opening, rebuttal, and closing shows no such remarks were made. ECF No. 10-4 at 12-15, 100-09, 116-18. And Robertson admitted in his reply brief that "[i]f the transcript fails to support this issue, Mr. Robertson apologizes for any inconvenience or confusion which has been caused by such." ECF No. 15 at 16.

Robertson admittedly fails to show any misconduct on the part of the prosecution and fails to show any "persistent and pronounced" misconduct or that the evidence of his guilt was insubstantial such that he would not have been convicted but for the allegedly improper remarks. *Geiger*, 540 F.3d at 308. This claim should be denied and dismissed.

### F.   Robert fails to state a viable federal claim regarding peremptory challenges.

Robertson objects to the number of peremptory challenges that the State was allegedly afforded at trial.  As discussed in the Memorandum Order (ECF No. 5 at 3, n.1), this claim is not reviewable under § 2254 because it only presents a question of state law as opposed to one of constitutional dimension.  *See Ross v. Oklahoma*, 487 U.S. 81, 88–89 (1988) ("Because peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise."); *Georgia v. McCollum*, 505 U.S. 42, 57 (1992) ("[T]he right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial.").  There is no habeas review of alleged errors of state law.  *Swarthout*, 562 U.S. at 219.[1]

### G.   Robertson's *Batson* claim is conclusory.

Robertson alleges that the prosecution improperly excluded jurors on the basis of race and gender in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986) and *Powers v. Ohio*, 499 U.S. 400 (1991).  The Louisiana Supreme Court denied this claim on post-conviction review.  *See Robertson*, 280 So.3d at 559.  As the trial court noted in denying this claim, the prosecution "used peremptory strikes on one African-American female, two white males and two African-American males.  Petitioner has

---

[1] Moreover, according to the trial court, the State used only five peremptory challenges, as opposed to 13, as Robertson alleges.  ECF No. 10-5 at 113.

failed to meet his burden as both genders and races are present in the State's peremptory strikes."  ECF No. 10-5 at 113.

Robertson provides no explanation or basis for his conclusion the state courts' application of *Batson* was objectively unreasonable.  *See Morales v. Thaler*, 714 F.3d 295, 303 n.5 (5th Cir. 2013) (noting that § 2254(d)(2) requires that a state court's findings be objectively unreasonable, not just disagreed with by the federal habeas court).  The term "unreasonable" refers not to "ordinary error" or even to circumstances where the petitioner offers "a strong case for relief," but rather to "extreme malfunctions in the state criminal justice systems."  *Harrington*, 562 U.S. at 102.  Robertson's claim is unsupported and conclusory as he provides no facts indicating an extreme malfunction in the justice system occurred.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("We are thus bound to re-emphasize that mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.").

## H.  Robertson cannot establish insufficient evidence to convict.

Next, Robertson claims that, under *Jackson v. Virginia,* 443 U.S. 307 (1979), the evidence was insufficient to convict him of aggravated rape of his daughter.  He complains that the allegations were made 30 years after the incidents reportedly occurred, and there was no physical evidence supporting the claim.

Robertson raised this federal claim in his direct appeal to the Louisiana Second Circuit Court of Appeal and in his post-conviction application and subsequent writ application to the Louisiana Supreme Court.  ECF No. 10-5 at 42; 10-6 at 41. However, as the State points out, Robertson failed to present the federal nature of his

claim to the Louisiana Supreme Court on direct review or to the Second Circuit on post-conviction review. ECF No. 10-6 at 149.

A habeas petitioner must exhaust available state remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509 (1982). In order to satisfy this requirement, the petitioner must have "fairly presented" the substance of each of his claims to the state courts in a procedurally proper manner. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). "[A] state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material . . . that does so." *Baldwin v. Reese*, 541 U.S. 27, 29–32 (2004); *Simon v. Cain*, 6:13-CV-0784, 2014 WL 6909671, at *4 (W.D. La. 2014); *Thomas v. Cain*, 2006 WL 2990083, *16–17 (W.D. La. 2006).

Robertson did not seek writs on direct review in the Louisiana Supreme Court, so this claim was not presented to the highest state court on direct review. On post-conviction review, Robertson did not articulate the federal nature of his insufficient evidence claim to the Second Circuit. He merely asked that the appellate court "adopt and incorporate his [insufficient evidence] argument in the Original Application for Post-Conviction Relief and Memorandum in Support." *Id.* This claim was not fairly presented. And Robertson could not go back now and attempt to re-raise the claim

in the state courts.  *See* La. C. Cr. P. art. 930.4(D), (E).[2]  Therefore, the claim is procedurally defaulted.[3]

Federal habeas review of a procedurally defaulted claim is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750-51; *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).  Robertson makes no such showing.

Even if the claim was not procedurally defaulted, it is meritless.  Review of a sufficiency of the evidence claim is "doubly deferential."  The state court decision may not be overturned on federal habeas review unless the decision was an objectively unreasonable application of the deferential *Jackson* standard.  *See Parker v. Matthews*, 567 U.S. 37, 43; *Harrell v. Cain*, 595 F. App'x 439 (5th Cir. 2015).  The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

---

[2] Article 930.4(D) provides that "[a] successive application shall be dismissed if it fails to raise a new or different claim;" and (E) provides that "[a] successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

[3] Procedural default occurs when (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule that provides an independent and adequate ground for the dismissal, or (2) the petitioner fails to exhaust state remedies and his claims would now be procedurally barred by the state courts. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Essentially, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The habeas court may not substitute its interpretation of the evidence or assessment of credibility for that of the factfinder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995). All credibility determinations and conflicting inferences are to be resolved in favor of the verdict. *See Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005), *cert. denied*, 546 U.S. 831 (2005).

At the time of the offense at issue, La. R.S. 14:42 defined aggravated rape as "rape committed where the sexual intercourse is deemed to be without lawful consent of the female because it [is] committed under any one or more" enumerated circumstances, including that the female is "under the age of twelve years." ECF No. 10-4 at 187; *Robertson*, 243 So.3d at 1200.

Under Louisiana law, the "testimony of the victim alone is sufficient to establish the elements of the offense of aggravated rape, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant." *State v. Wallace*, 2013-0149 (La. App. 4 Cir. 6/25/14), 143 So.3d 1275, 1279 (citing *State v. Lewis*, 97–2854, p. 33 (La. App. 4 Cir. 5/19/99), 736 So.2d 1004, 1023, *writ den.*, 1999-2694 (La. 3/17/00), 756 So.2d 325); *see also Broadway v. Office of District Attorney*, 676 F. App'x 346, 347 (5th Cir. 2017), *cert. den.*, 137 S. Ct. 2197 (U.S. 2017) ("[I]n the absence of scientific evidence, testimony

18

alone is sufficient to establish penetration.") (citing *State v. Rives*, 407 So.2d 1195, 1197 (La. 1981)).

In this case, the State presented testimony from three witnesses who experienced sexual abuse by Robertson. As summarized by the appellate court:

> At trial, T.N. testified that Robertson first sexually abused her when she was about three years old, while her mother was away. She recalled that Robertson took her and her siblings to the bathroom and made them pull their pants down, and get on their hands and knees. He then molested each of them by inserting his Vaseline-covered fingers into their anuses and vaginas. Robertson told the children that this was his "special cleaning." T.N. testified that Robertson subjected her to this "special cleaning" about once a month for multiple years and always when their mother was gone from the home. According to T.N., she and her siblings were afraid to tell anyone because Robertson had told them that he would beat them with switches until they bled.
>
> T.N. testified that Robertson had sexual intercourse with her on two occasions before she turned 12. She recalled that the first time was in April 1973 when she was 9 years old. Robertson had picked her up early from elementary school because she had gotten in trouble. On the ride home, Robertson told T.N. that she would get a spanking, which scared her because Robertson usually spanked them with a switch or a belt. When they arrived at the house, Robertson sent T.N. to her bedroom. Robertson then entered T.N.'s bedroom carrying a switch and told T.N. to take off her pants and put a towel over her face. T.N. testified that she put a towel over her face as instructed and was lying on the bed when she felt Robertson penetrate her vagina with his penis. T.N. said she knew that Robertson was having intercourse with her because her vagina was hurting and she felt his shirt hitting her sides. She had no doubt that Robertson raped her with his penis.
>
> T.N. testified that when Robertson finished, she told him that she knew what he was doing, that it was "what married people do," and that she was going to tell her mother. Robertson responded that if T.N. said anything, her mother would hate her and her siblings and would leave them and then they "would really get it." T.N. further testified that she started bleeding and that her mother attributed the bleeding to her first menstruation. She was diagnosed with a yeast infection and developed urinary and kidney problems that she associated with the sexual intercourse.

T.N. testified that she was raped the second time by Robertson, behind his shop, when she was about 11 or 12 years old. She later clarified the rape occurred a couple of months before Robertson left to go to Alaska in June of 1975.[4]   T.N. testified that Robertson had her take off her pants and bend over a sawhorse at which time he proceeded to rape her. T.N. testified that she watched Robertson penetrate her vagina with his penis. She stated she did not run away from Robertson because she believed he would severely beat her if she resisted. She then described some of the severe beatings she had endured from Robertson at other times. T.N. indicated Robertson beat her with a switch after raping her. T.N. also testified that she had heard Robertson raping and beating her sister, D.J., in his bedroom about a month after T.N. was first raped by Robertson. T.N. believed D.J. was being raped and beaten because it had just happened to her and she heard her sister screaming, the bed springs squeaking, and Robertson slapping D.J. T.N. said she knew it was D.J. with Robertson because her mother was gone and shortly before she heard the screaming, Robertson had come into the bedroom she shared with D.J. and taken D.J. out of the room.

D.J. testified that, not only had Robertson subjected her to many "special cleanings" as a child, but that he also raped her about 8 or 9 times during her childhood and recalled that at least two of those times she was under the age of 12. She also remembered an incident when Robertson made her stand in the shed with her pants down and fondled her vaginal area. D.J. testified that she was about 10 years old when Robertson first raped her. She stated they were alone in the house because her mother was in the hospital and her siblings were staying the night with their grandparents. D.J. was asleep in her bed when Robertson picked her up, carried her into his room and placed her on his bed. D.J. was lying on her stomach, "scared to death," and pretending to be asleep, when she felt Robertson put his penis into her vagina. When it was over, D.J. left her parents' bedroom and testified, "I was scared, but my innocence was completely lost from that moment on. It was robbed from me."
D.J. testified that on several occasions she threatened to tell about the sexual molestations. She said Robertson responded by threatening to kill her and saying things that destroyed her self-worth and self-esteem. D.J. testified that Robertson beat her with switches when she tried to resist his sexual advances. D.J. indicated that Robertson stopped raping her when she was about 14 years old.

---

[4] T.N. turned 11 years old on February 12, 1975.

T.N. and D.J. both testified that they suffer from mental illness as a result of Robertson's sexual abuse. T.N. testified that she suffers from severe post-traumatic stress disorder, is mentally ill, and has had a series of failed marital relationships due to the sexual abuse she endured from Robertson. T.N. also testified that Robertson even put her in a mental institution for about a year, after her brother passed away.

T.N. and D.J. also testified that, as adults, they maintained contact with Robertson. They admitted to visiting Robertson and his new wife at his home. D.J. also admitted that she had allowed her son to stay with them for two weeks and her six-year-old daughter to stay with them for a couple of days. When asked why she would visit Robertson, T.N. explained that it was because she was raised to believe in honoring your mother and father and she did not know anything else. Furthermore, T.N. believed that Robertson would not sexually assault anyone else because he apologized to her on several occasions and represented that he had gotten help and would never "do that again." Likewise, D.J. testified that she had allowed her children to stay with Robertson because he had apologized to her and told her that he would not hurt anyone again, and she believed him. She also felt comfortable with her leaving her children because her stepmother, Robertson's wife, assured her nothing would happen. T.N and D.J. both testified that they decided to report the sexual molestation to authorities many years later, after they found out Robertson was molesting their niece, R.S.

R.S., who was 15 years old at the time of trial, testified that Robertson is her grandfather and that she has lived most of her life with Robertson and her grandmother, Robertson's wife, and her aunt, in Montgomery, Louisiana. R.S. testified that Robertson had raped her repeatedly over the years. She described the sexual contact as follows:

Q. Did he put his mouth in your private area?
A. Yes, sir.
Q. Did he make you put your mouth on his?
A. Yes, sir.
Q. Did he physically put his penis inside you?
A. Yes, sir.
Q. And so when you say raped; that's what you mean?
A. Yes, sir.
Q. But that wasn't all he did, correct?
A. No, sir.

According to R.S., Robertson raped her in the house or "pretty much anywhere on the property," and threatened to hit her if she resisted. She

testified that when she was about 8 or 9 years old, she realized from things she learned at school that she was being raped by him. She stated the rape usually occurred when her grandmother and aunt were not home. R.S. testified that she kept quiet about the sexual abuse because Robertson told her to "zip it" and throw away the key and that no one would believe her. However, R.S. admitted that she told her best friend, A.S., about the rapes to prevent A.S. from visiting her at home and potentially being molested or raped by Robertson.[5] When R.S. was about 13 years old, her friends reported what was going on to a teacher who subsequently told the school principal.

Robertson did not submit any evidence to contradict any of the testimony. Robertson's counsel attempted to discredit T.N.'s testimony on cross-examination by questioning the fact that she waited almost 40 years to report the sexual abuse and by pointing out that she had visited her father as an adult, even with her children. However, the jury found credible T.N.'s rational explanations for both the delay in reporting the sexual abuse and her visits with Robertson.

*Robertson*, 243 So.3d 1196, 1201–03.

In affirming the conviction, the appellate court stated:

Robertson's argument that the conviction could not stand without physical evidence to support the charges is without merit, as is his argument that the State's witnesses lacked credibility. The jury found T.N.'s testimony credible and her testimony alone was sufficient to prove that Robertson committed the crime of aggravated rape. Notwithstanding, the State did not rely on T.N.'s testimony alone. Rather, through the testimony of D.J. and R.S., the State submitted evidence that Robertson had exhibited similar sexually abhorrent acts with other adolescents in his paternal care.

Robertson argues the evidence of "other crimes" is not evidence showing that he raped T.N. However, he does not raise any argument that the trial court erred in allowing the testimony and he did not object to the admissibility of the testimony at trial. A contemporaneous objection is required to preserve an error for appellate review. La. C.E. art. 103(A)(1); La. C. Cr. P. art. 841(A).

---

[5] The state also called A.S., who was 16 years old during trial. A.S. testified that she has been friends with R.S. since the fourth grade and that when they were in sixth or seventh grade, R.S. told her that her grandfather raped her.

Moreover, there is no evidence in the record that the trial court abused its discretion in the admission of D.J. and R.S.'s testimonies. Rather, the record reflects the State timely filed a 412.2 notice which adequately informed Robertson of the nature and factual content of D.J. and R.S.'s claims consisting of other sexual assaultive behavior or acts. D.J. and R.S.'s testimonies at trial conform substantially to the details of the offenses as described by the language in the notification. *See State v. Baker*, 452 So.2d 737 (La. 1984). Furthermore, jurisprudence shows that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes. *See e.g., State v. Wright, supra; United States v. Enjady*, 134 F.3d 1427, 1430–1431 (10th Cir. 1998), *cert. denied*, 525 U.S. 887, 119 S.Ct. 202, 142 L.Ed. 2d 165 (1998) (Article 412.2 closely follows Fed. R. Evid. 413).

We find the evidence of other sexually assaultive behavior was highly relevant and probative to show that Robertson had a propensity for sexual activity with adolescents under his paternal care, and this evidence could be considered by the jury as proof that Robertson's behavior with T.N. was in conformity with this predisposition. Furthermore, like T.N., D.J. provided rational explanations for her delay in reporting the sexual assaults and for allowing a rational explanation for allowing her children to stay with him and his new wife, years after the assaults. Consequently, a review of the record as a whole and the egregiousness of its facts, demonstrate the jury's determination was reasonable and that a rational trier of fact could have found the evidence was sufficient under the Jackson standard to support Robertson's conviction.

*Robertson*, 243 So.3d at 1203-04.

No evidence or testimony was offered to rebut the testimony of T.N., D.J., or R.S. Based on the testimony, and because all credibility determinations must be resolved in favor of the verdict, *Ramirez*, 398 F.3d at 695, Robertson cannot establish that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *See West v. Johnson*, 92 F.3d 1385 (5th Cir. 1996), *cert. den.*, 520 U.S. 1242 (1997) (citing *Jackson*, 443 U.S. at 322-26). There are no grounds for overturning the state

court decision on federal habeas review, as its adjudication of this claim was not objectively unreasonable.

## I.   Robertson presents no viable claim regarding the statute of limitations.

Robertson claims that the charges of aggravated rape of his daughter, T.N., were prescribed under Louisiana law.  Robertson's claim is based on state law, despite his reference to a federal case.

As the appellate court concluded:

> The penalty in effect for aggravated rape at the time Robertson committed the crimes in April of 1973 and June of 1975 was death.  *See* La. R.S. 14:42 (1950).  In 1976, Louisiana's mandatory death sentence for aggravated rape was struck down as unconstitutional by the United States Supreme Court in *Selman v. Louisiana*, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed. 2d 1212 (1976).  The Louisiana Supreme Court responded by requiring that aggravated rape convicts previously sentenced to death be resentenced to the most serious penalty for the next lesser included offense; *e.g.* attempted aggravated rape.  *State v. Valentine*, 364 So.2d 595, 596–97 (La. 1978); *State v. Bryant,* 347 So.2d 227, 228 (La. 1977); *State v. Sledge*, 340 So.2d 205 (La. 1976); *State v. Craig*, 340 So.2d 191 (La. 1976); *State v. Lee*, 340 So.2d 180 (La. 1976).[6] Consequently, the sentence to be imposed at the time of both crimes in this case is the mandatory maximum for attempted aggravated rape, which is 20 years at hard labor without any restriction on parole, probation, or suspension of sentence.  *See* La. R.S. 14:27, Act. No. 471; *Craig*, *supra* at 192.[7]

---

[6]This mandate governed sentencing until the new aggravated rape statute took effect on September 9, 1977, which replaced the death penalty for aggravated rape with a life sentence at hard labor, without benefit of parole, probation, or suspension of sentence. La. Acts 1977, No. 343.

[7]At the time Robertson committed the April 1973 rape, pursuant to La. C. Cr. P. art. 814 (1967), the jury was authorized to return a verdict of "guilty without capital punishment," which resulted in a sentence of life imprisonment.  However, Article 814 was subsequently amended to remove jury discretion to impose any penalty but death for a capital offense, including aggravated rape. Statutory amendments to responsive verdicts are procedural, and the list of responsive verdicts in effect at the time of trial, not the time of offense, should be used.  *State v. Martin*, 351 So.2d (La. 1977); *State v. Garner*, 39,731 (La. App. 2 Cir. 11/17/05), 913 So.2d 874, *writ denied*, 05-2567 (La. 05/26/06), 930 So.2d 19. *See e.g., State v. Fraise*, 350 So.2d 154 (La. 1977), (defendant, who was convicted in 1975 for an aggravated rape that

24

*Robertson*, 51,521 (La.App. 2 Cir. 8/16/17, 12–13); 243 So.3d 1196, 1204.

Robertson argues that, because aggravated rape was no longer a capital offense after *Selman*, the applicable limitations period for his case should be six years under La. C. Cr. P. art. 572, which applies to "non-capital" offenses. However, La. C. Cr. P. art. 571 specifically provides that there is no time limitation for the prosecution of offenses for which a life sentence may be imposed—such as aggravated rape. Numerous courts have recognized that Article 571 applies to aggravated rape cases.[8] Robertson did not receive a sentence of death in violation of *Selman*. Despite Robertson's reference to *Selman*, his claim regarding the limitations period is a matter of state law for which there no habeas review. *See Swarthout*, 562 U.S. at 219.

The State amended La. C. Cr. P. art. 571 in 1984 to remove any time limitation for the prosecution of offenses for which a life sentence may be imposed. Robertson claims that, because the offenses against T.N. occurred in the 1970s, there has been a federal ex post facto violation.

---

occurred in 1971, was re-sentenced from death to "the most serious penalty for a lesser-included offense at the time of the commission of the crime," attempted aggravated rape).

[8] *See Nalls v. Cain*, 14-CV-734, 2020 WL 4460401, at \*13 (M.D. La. 2020), *report and recommendation adopted*, 2020 WL 4456503 (M.D. La. 2020); *State v. Kurz*, 51,781 (La. App. 2 Cir. 2018); 245 So.3d 1219, 1230, *writ denied*, 2018-0512 (La. 2019); 262 So.3d 285, *writ denied*, 2018-0529 (La. 3/25/19); 267 So.3d 598 (finding that Article 571 continued to apply to aggravated rape despite the unconstitutionality of the mandatory death penalty prescribed for that crime , which is in accordance with legislative intent and jurisprudence; *State v. Smith*, 2001-1027 (La. App. 1 Cir. 2/15/02), 809 So.2d 556, 561–2 (Article 571 applied to aggravated rape prosecution despite the invalidity of the death penalty the legislature sought to impose on that crime); *State v. Fraise*, 350 So.2d 154 (La. 1977) (despite the unconstitutionality of the mandatory death penalty for aggravated rape, Article 571 applied to the crime of aggravated rape).

Robertson did not fairly present the federal nature of this claim to all Louisiana courts. Like his sufficiency of the evidence claim, Robertson presented this claim before the state trial court and the Louisiana Supreme Court in his post-conviction filings, but not to the Second Circuit. ECF No. 10-5 at 43-46, 143-45; 10-6 at 42-46.

In the Second Circuit, Robertson only complained about the application of state law and requested that the appellate court adopt his argument from his application for post-conviction relief. As mentioned above, a claim is not fairly presented to a state court if that court must read beyond the petition or brief to find it. *See Baldwin v. Reese*, 541 U.S. at 29–32; *Simon,* 2014 WL 6909671, at *4 (petitioner's attempt to adopt and incorporate the arguments contained in his lower court briefs was insufficient to fairly present his federal claim to the higher court); *Thomas*, 2006 WL 2990083, at *16–17 (petitioner's attempt to adopt and incorporate the arguments contained in his briefs presented to the lower courts was insufficient). Robertson's brief did not assert a claim "in terms so particular as to call to mind a specific right protected by the Constitution" or allege "a pattern of facts that is well within the mainstream of constitutional litigation." *Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013) (internal quotations marks and citations omitted); *Conner v. Warden*, 20-CV-0309, 2020 WL 3578591, at *1 (W.D. La. 2020), *report and recommendation adopted*, 2020 WL 3578020 (W.D. La. 2020).

Robertson's ex post facto claim is procedurally defaulted. The two-year time limitation provided by La. C.Cr.P. art. 930.8 for seeking post-conviction relief has expired, so it is now too late for Robertson to exhaust the federal claim.

Federal habeas review of a procedurally defaulted claim is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51; *Finley*, 243 F.3d at 220. Robertson makes no such showing.

Even if the claim was not defaulted, Robertson does not show that the state courts' adjudication of this claim was contrary to or involved any unreasonable application of clearly established federal law as determined by the United States Supreme Court. Though he cites *Stogner v. California*, 539 U.S. 607 (2003), that case involved a change in the law allowing a prosecution after the case had been time-barred by the expiration of a previously applicable limitations period. In this case, the State did not enact any laws that revived a previously time-barred prosecution. The only limitations period ever applicable to Robertson's prosecution for the aggravated rape of T.N. was the one provided in Article 571.

Robertson's argument that *Selman* or *Stronger* affected the time limitations applicable to his prosecution for aggravated rape is legally unsupported.

## III. <u>Conclusion</u>

Because Robertson's claims are meritless and some are procedurally defaulted, IT IS RECOMMENDED that the § 2254 Petition be DENIED AND DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service,

unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Tuesday, February 22, 2022

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE